683 So.2d 130 (1996)
METROPOLITAN DADE COUNTY, Petitioner,
v.
Sally BANNISTER, Respondent.
No. 94-1005.
District Court of Appeal of Florida, Third District.
May 8, 1996.
Order Denying Rehearing and Rehearing December 11, 1996.
*131 Robert A. Ginsburg, County Attorney, and William X. Candela, Assistant County Attorney, for petitioner.
H. Steven Sussman, Miami, Bruce S. Rogow, Beverly A. Pohl, Fort Lauderdale, for respondent.
Before BARKDULL, COPE and GODERICH, JJ.
Order Denying Rehearing and Rehearing En Banc December 11, 1996.
PER CURIAM.
On August 13, 1991, Sally Bannister, a Corrections Officer with the Dade County Department of Corrections, tested positive for cocaine metabolite. The Director of the Dade County Department of Corrections terminated Bannister and she sought administrative review. Witnesses for both the Department of Corrections and Bannister testified before a hearing officer. Bannister testified that she had never knowingly taken cocaine but also that she had the practice of accepting food from inmates. The hearing officer found that the County had carried its burden of proving that Bannister's test results were positive and that there was no reason to doubt the reliability of the test procedures or results. He held however, that "this drug may have been ingested without the Appellant's knowledge." He concluded that Bannister should be disciplined because she should have known what could happen if she accepted food from inmates. He recommended that the dismissal be reduced to a suspension and that Bannister be subject to random drug testing for a period of not less than six months.
The Department appealed to the county manager who reviewed the report of the hearing examiner. The manager concluded that the hearing examiner's finding that the ingestion of cocaine was unintentional was not supported by any evidence or testimony and accordingly sustained Bannister's dismissal.
Bannister appealed the dismissal to the circuit court, appellate division. The circuit court panel held in a split decision (Judge Hubbart dissenting) that the county manager had erred in reversing the hearing officer and ordered Bannister reinstated with back pay. The panel also held that the Florida Administrative Procedure Act, chapter 120, Florida Statutes (1993), applied to county personnel appeals under section 2-47 of the Code of Metropolitan Dade County, and that the factual findings of a hearing officer could not be overturned if they were supported by competent substantial evidence.
Dade County then filed a petition for certiorari with this court asserting that the circuit court did not apply the correct law and that the decision of the circuit court should be quashed.
We first recognize that in reviewing a decision of the circuit court acting in its appellate capacity, this court must determine whether the "circuit court afforded procedural due process and applied the correct law." City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla.1982). As Judge Cope's dissent correctly states, the Florida Administrative Procedure Act does not apply to county personnel appeals and so the circuit court in this *132 instance applied the incorrect law. Section 120.52(1)(C), Fla.Stat. (1993).
The procedure for county personnel appeals is set out in section 2-47 of the Code of Metropolitan Dade County. The hearing examiner conducts a hearing and transmits his findings of fact, conclusions, and any recommendations together with a transcript of all the evidence to the county manager. The county manager then has the express authority to "sustain, reverse or modify the suspension, reduction in grade, or the dismissal." Code of Metropolitan Dade County § 2-47. This section was amended in 1974. Prior to 1974, a Personnel Advisory Board conducted the hearing and made "advisory findings and recommendations." McKim v. McNayr, 168 So.2d 78, 79 n. 3 (Fla. 3d DCA 1964), cert. denied, 173 So.2d 148 (Fla.1965).
A series of cases from this court have interpreted section 2-47 of the Dade County Code. In 1964 this court held that the findings of the Personnel Advisory Board were merely advisory. That is, the county manager could choose to follow the findings and recommendations of the Board or alternatively, he could disregard the findings and recommendations as long as there was some evidence adduced before the Board to support the manager's decision. McKim v. McNayr, 168 So.2d 78, 80 (Fla. 3d DCA 1964), cert. denied, 173 So.2d 148 (Fla.1965). This rule was reaffirmed in Metropolitan Dade County v. Corozzo, 212 So.2d 891, 893 (Fla. 3d DCA 1968). The cases following Corozzo adhered to this interpretation of section 2-47 notwithstanding the amendment to the code that deleted the phrase "advisory findings." See Smith v. Metropolitan Dade County, 532 So.2d 84, 85 (Fla. 3d DCA 1988); Victor v. Stierheim, 380 So.2d 1319, 1321 (Fla. 3d DCA 1980); Metropolitan Dade County v. Marusa, 295 So.2d 704, 706 (Fla. 3d DCA 1974).
Based upon the above stated cases, the county manager has the authority to reweigh the evidence, assess whatever weight and credibility he deems appropriate to the evidence and disagree with the hearing examiner's conclusion. The appellate court may then reverse the county manager's decision only if it is not supported by substantial competent evidence in the record. We find that the positive test for cocaine metabolite is substantial competent evidence to support the manager's decision. We also agree with Judge Hubbart's apt comment in his dissent to the circuit court majority opinion that "[t]he Appellant had no more than some theories for how she might have unknowingly ingested cocaine." The manager reasonably concluded that there was no evidence or testimony that supported a finding of unintentional ingestion. Therefore, the decision of the circuit court must be quashed and the decision of the county manager reinstated.
Judge Cope argues in his dissent that given the fact that the code no longer contains the phrase "advisory findings" and given that the law of masters has changed since 1964, this court should recede from these opinions to the extent that they hold that the county manager may conduct a de novo review of the record and disregard the findings of the hearing examiner as long as there is some evidence in the record to support his decision. He asserts that since the findings are no longer advisory, the county manager does not have the authority to reverse or disagree with any findings of fact unless they are not supported by competent substantial evidence. We conclude that even if this interpretation were to be accepted and this court receded from prior law, the facts of this case would still warrant reversal.
The Charter of the City of Miami has a provision very similar to the present section 2-47 of the Dade County Code and the courts have interpreted that section on several occasions. See City of Miami Charter § 25. In State ex rel Eldredge v. Evans, 102 So.2d 403 (Fla. 3d DCA 1958), this court held that the city manager was bound by the findings of fact made by the Civil Service Board.[1] However, once the Civil Service Board determined the guilt or innocence of the accused, the city manager had complete *133 discretion in the determination of the appropriate disciplinary action. Id. at 405. The court distinguished that case from City of Miami v. Huttoe, 38 So.2d 819 (Fla.1949) wherein the Civil Service Board had found the employee innocent of all charges and recommended reinstatement, yet the city manager disagreed and discharged the employee. In Huttoe, the court found that the city manager had exceeded his authority. Id. at 820. Also instructive is City of Miami v. State ex rel. Houston, 102 So.2d 176 (Fla. 3d DCA 1958) in which this court clarified its previous opinion and stated that the city manager was bound only by the findings of guilt or innocence, but not by the recommendations as to the particular penalty. Id. at 177. See also City of Miami v. White, 165 So.2d 790, 791 (Fla. 3d DCA 1964) ("The right and authority of the city manager of the City of Miami to impose a different penalty than that recommended by the civil service board has been recognized and established..."). Therefore, we read these cases as establishing the rule that if the person or entity who hears the evidence finds that the employee has committed an offense, then the city manager has complete discretion in the determination of the penalty. If on the other hand, the hearing examiner determines that the employee is not guilty of any misconduct, then the city manager would not be at liberty to disagree with the finding of innocence and impose a penalty.
In the present case the hearing examiner found that while the ingestion of cocaine may have been unintentional, Bannister had committed misconduct and should be suspended for six months. If he had found Bannister completely innocent of any offense, then he would not have recommended the relatively severe penalty of a six month suspension and random drug testing. Pursuant to the standard set out in the City of Miami cases, once there has been a finding of misconduct, the county manager then has total discretion to determine the appropriate disciplinary action. This interpretation is confirmed by the plain language of section 2-47 of the Dade County Code. That section permits the manager to "sustain, reverse or modify the suspension, reduction in grade, or the dismissal." There is no basis, either in the relevant caselaw, or the plain language of the code, to impose a rule that the manager can modify the disciplinary recommendations of the hearing examiner only if they are not supported by competent substantial evidence. Therefore, since the county manager is authorized to modify a suspension, and that is exactly what he did, we find that his decision to discharge Bannister should be sustained.
In summary, we first hold that, based on the line of cases construing section 2-47 that are still good law, the county manager may conduct a de novo review of the record and his decision may only be reversed if there is no competent substantial evidence in the record to support it. In this case the positive test for cocaine metabolite was determined to be reliable and there was no credible evidence or factual testimony presented before the hearing examiner to support the conclusion of unintentional ingestion. Therefore, the county manager's decision was supported by substantial competent evidence and the circuit court majority erred in reversing his decision.
Second, even if the amendment to the Dade County Code is interpreted as making the findings of fact binding on the county manager unless they are not supported by competent substantial evidence, the county manager still has complete discretion in the determination of the appropriate penalty once there has been a finding that the employee committed an offense. In other words, it is only the findings of fact that would no longer be advisory, not the recommendations as to the penalty. In this case there was a finding that Bannister committed an offense. The county manager modified the recommended suspension as he was expressly authorized to do, so his decision should be sustained.
Third, the circuit court majority departed from the essential requirements of law when they found that the Florida Administrative Procedure Act, chapter 120, Florida Statutes (1993) applied to county personnel appeals under section 2-47 of the Dade County Code.
Accordingly, the writ of certiorari is granted, the decision of the circuit court is *134 quashed, and the decision of the county manager is reinstated.
Writ of Certiorari granted.
BARKDULL and GODERICH, JJ., concur.
COPE, Judge (dissenting).
I respectfully dissent.

I.
A hearing examiner after evidentiary hearing found that Sally Bannister, a correctional officer with an outstanding record, most likely tested positive for cocaine because of an inadvertent exposure to the substance during the course of her work at the county jail. The hearing examiner made detailed factual findings in which he found Bannister and her witnesses to be credible. The hearing examiner found that the county had not carried its burden of proof of showing intentional ingestion of cocaine, and recommended overturning the Corrections Department's decision to fire her.
When the County Manager received the hearing report, the Manager rejected the factual finding that any ingestion of cocaine was unintentional. In doing so, the Manager said that the hearing examiner's factual finding on this point was not supported by the evidence. The Manager then substituted his own judgment for that of the hearing examineralthough the Manager had not conducted the hearing, had not heard the evidence, and had not observed the witnesses. The Manager thereupon affirmed the Corrections Department's decision to fire Bannister.
The circuit court panel ordered Bannister reinstated, and the County has petitioned this court for certiorari. We should deny the petition. Regardless of what standard of review is applied, the Manager's order in this case was in error and cannot be sustained. This court's decision in McKim v. McNayr, 168 So.2d 78 (Fla. 3d DCA 1964), cert. denied, 173 So.2d 148 (Fla.1965), and its progeny, must be given a reasonable interpretation, not one which turns the hearing process into an empty ceremony. If the majority is correct in its reading of McKim, then McKim should be overruled.

II.
Bannister joined the Metro-Dade Corrections & Rehabilitation Department in 1985. She consistently received high marks for her work performance, always being evaluated above satisfactory or outstanding. She was recommended for a Humanitarian Award for helping save an inmate's life.
In August, 1991 Bannister was notified to report for her periodic physical examination and drug screening test. Because of prior vacation plans, she requested an earlier examination date. Thus she took the examination eighteen days early, on August 13 rather than August 30, 1991. She tested positive for cocaine metabolite and was terminated by the Corrections Department. She appealed her dismissal.
The County selected a hearing examiner from the American Arbitration Association list. See Dade County Code § 2-47. At the lengthy evidentiary hearing, Bannister and other witnesses testified. Bannister testified that she had never knowingly ingested cocaine and that she suffered from a serious heart condition which would make ingestion of cocaine highly dangerous. Bannister's supervisors testified to her exemplary character and the lack of any indications of any drug use.
There was evidence that cocaine is smuggled into the jail by various means. Two weeks before Bannister's drug screening test, crack cocaine was confiscated during a shakedown of a cell in her unit. The evidence was unrefuted that cocaine could be absorbed through unknowing consumption or through the skin by contact with a contaminated substance. Bannister testified that she had accepted food from inmates with regularity, which could conceivably be such a source of contamination.
Important for present purposes is the hearing examiner's explicit finding that Bannister is a credible person, and that he believed Bannister and the witnesses who testified on Bannister's behalf. The hearing examiner found that unintentional ingestion of cocaine was the likely explanation for the test result. The hearing examiner therefore *135 recommended that Bannister be reinstated to her position as correctional officer, but that lesser discipline be imposed because of her unwise practice of accepting food from inmates. He also recommended that Bannister be subject to random unannounced drug testing for a period to be set by the Department.
Under the County's ordinance, the hearing examiner's findings of fact, conclusions and recommendations were submitted to the County Manager. Dade County Code § 2-47. The Manager overturned the findings regarding unintentional ingestion of cocaine as follows:
Dear Ms. Bannister:
I have received the findings and recommendation of the Hearing Examiner in the matter of your appeal of the actions taken by the Corrections and Rehabilitation Department in dismissing you from their service. A copy of the findings has been sent to your attorney.
The Hearing Examiner found that you did have cocaine in your system. However, the Hearing Examiner concluded that the cocaine was unintentionally ingested by you. On this basis, the Examiner found that the dismissal was too harsh of a penalty thereby the recommendation to reduce your dismissal to a suspension.
I cannot accept the conclusion of the Hearing Examiner regarding the unintentional ingestion of the cocaine. No evidence or testimony was presented to support this conclusion although there was ample opportunity provided. In fact, the Hearing Examiner stated that the appellant can offer no reason for testing positive on August 13, 1991 even though she claims to have never taken cocaine in her life. Although it is most unfortunate to end your career in this manner, the circumstances of this case leaves me no alternative but to support the action of the department.
Therefore, I am hereby upholding the decision of the Department and confirming your dismissal from the County service.
 Sincerely,
 /s/______________________________
 Joaquin G. Avino, P.E., P.L.S.
 County Manager
It is important to focus on what the County Manager did, and why he did it. Three points stand out.
First, the County accepts the proposition that inadvertent exposure is a viable defense against a positive drug screening test. Indeed, it would be absurd to contend otherwise. If an employee is exposed to cocaine as part of a prescription medication, or in the course of job duties, as where an employee confiscates contraband, plainly there is no unlawful ingestion of cocaine and no basis for imposing discipline. The same logic applies if an employee unknowingly consumes food or drink containing cocaine. The County's expert testified that several years ago an imported herbal tea available in commercial stores was found to contain enough cocaine to produce a positive test result, and during the pendency of this appeal, the federal Drug Enforcement Administration issued a warning regarding an imported tea which was being sold in local food stores. The Miami Herald, October 14, 1995, at 1B ("Strange Brew: Illegal Coca Tea Skews Drug Test").
Second, as the County Manager viewed it, the question before him was whether or not there was competent substantial evidence to support the hearing examiner's finding of unintentional ingestion of cocaine. The Manager ruled that the evidence of unintentional ingestion was insufficient.
Third, the Manager did not enter any findings of his own. He simply reviewed the evidentiary sufficiency of the findings made by the hearing examiner.

III.
The question before us is, to what extent is the County Manager bound by findings of fact entered by a hearing examiner under section 2-47 of the Dade County Code? The circuit court majority held that county personnel appeals under section 2-47 are subject to the Florida Administrative Procedure Act, chapter 120, Florida Statutes (1993) ("Florida APA"). Applying the Florida APA, the circuit court ruled that the County Manager *136 should not have overturned the factual findings of the hearing examiner.[2]
The circuit court erred by utilizing the Florida APA, because it does not apply to County personnel appeals. See § 120.52(1)(c), Fla.Stat. (1993); Young v. Department of Community Affairs, 625 So.2d 831, 835 (Fla.1993); Hill v. Monroe County, 581 So.2d 225, 226-27 (Fla. 3d DCA 1991); Sweetwater Utility Corp. v. Hillsborough County, 314 So.2d 194, 195 (Fla. 2d DCA 1975); The Florida Bar, Florida Administrative Practice § 2.2, at 2-10 (4th ed. 1995).
Although the circuit panel applied an incorrect legal standard, the panel's ultimate conclusion was correct: the action by the Manager cannot stand.

IV.
To understand why the Manager erred, it is necessary to consider case law outside the Florida APA context to determine what deference the County Manager should give the factual findings of the hearing examiner.

A.
Bannister's personnel appeal is governed by section 2-47 of the Dade County Code. Section 2-47 has been interpreted by this court in several decisions beginning in 1964. At that time the ordinance was worded differently than it is today. Personnel appeal hearings were heard by the Personnel Advisory Board. At that time section 2-47 provided that the Board would make "advisory findings and recommendations [which] shall be transmitted to the manager who may sustain, reverse or modify the suspension, or reduction in grade, or the dismissal." McKim v. McNayr, 168 So.2d 78, 79 n. 3 (Fla. 3d DCA 1964) (emphasis added).
This court concluded that the County Manager should treat a report by the Personnel Advisory Board in the same way a chancellor would treat the report of a master:
We ... liken the County Manager's function [upon receipt of the report from the Personnel Advisory Board] to that of a chancellor upon receipt of a report of a special master, to wit: the findings together with the recommendations are merely recommendations which may or may not be followed by the County Manager, if there is evidence in the record before the recommending body which will support an action by the County Manager.... In other words, if the record as made before the Personnel Advisory Board [notwithstanding its findings and recommendations] will support the actions of the County Manager in discharging the employee and disregarding the findings and recommendations, his decision should be affirmed. However, if there is absolutely no evidence adduced before the Personnel Advisory Board to support the action of the County Manager in disregarding its findings and recommendations, then he would not be at liberty to disregard the report.
Id. at 80 (emphasis added; citations omitted).
McKim established two propositions. First, McKim held that the law governing masters' reports would govern the County Manager's review of reports by the Personnel Advisory Board. Second, McKim summarized those principles as they existed at the time McKim was decided in 1964.
Subsequently section 2-47 has been amended so that a hearing examiner conducts personnel appeal hearings, not the Personnel Advisory Board. Additionally, the phrase "advisory findings" has been eliminated from section 2-47. Now the hearing examiner makes findings of fact, not advisory findings.[3] Despite these amendments, this *137 court has continued to follow McKim. See Victor v. Stierheim, 380 So.2d 1319, 1321 (Fla. 3d DCA 1980); Metropolitan Dade County v. Marusa, 295 So.2d 704, 706 (Fla. 3d DCA 1974); Metropolitan Dade County v. Corozzo, 212 So.2d 891, 893 (Fla. 3d DCA 1968).

B.
McKim's principal holding was that the County Manager should apply the law of masters in reviewing a report by the Board (today, the hearing examiner). Writing in 1964, this court said a master's report is merely a recommendation. 168 So.2d at 80.
Since 1964, however, the law of masters has changed. A master's findings are no longer mere recommendations. This court has said:
Once a trial court decides to appoint a master to hear testimony and make findings of fact, it loses the prerogative of substituting its judgment for that of the master's. The court is thereafter bound by the master's factual findings if they are supported by competent evidence.
Bragassa v. Bragassa, 505 So.2d 556, 558 (Fla. 3d DCA 1987) (citations omitted). "This is so because the master is in a better position to make determinations of fact, having seen the witnesses and listened to the testimony." Fodor v. Fodor, 379 So.2d 466, 468 (Fla. 3d DCA 1980).[4]
If under McKim the County Manager is to apply the current law of masters, it follows that the Manager cannot reject the hearing examiner's factual findings so long as the findings are supported by competent substantial evidence.
Holding that the Manager must follow the current law of masters when reviewing a hearing examiner's report is a perfectly reasonable thing to dobecause that is exactly what the County Manager did in this case. The County Manager's letter, quoted above in section II of this opinion, explicitly states that he is rejecting the finding of unintentional ingestion because, in the Manager's view, that finding was not supported by the evidence. This exact inquirywhether a finding is supported by competent substantial evidenceis the inquiry a circuit judge performs in reviewing a master's report after the master has conducted an evidentiary hearing. Bragassa, 505 So.2d at 558. In sum, we would work neither surprise nor hardship on the County by interpreting McKim to require application of the current law of masters when the Manager reviews examiner's reports under section 2-47.
Applying the foregoing standard here, the Manager erred in concluding that there was no competent substantial evidence to support the finding of unintentional ingestion of cocaine. The Manager's letter states, "No evidence or testimony was presented to support this conclusion although there was ample opportunity provided. In fact, the Hearing Examiner stated that the appellant can offer no reason for testing positive on August 13, 1991 even though she claims to have never taken cocaine in her life."
In coming to this conclusion, the Manager misapprehended the law regarding competent substantial evidence. The Manager assumed that Bannister's own testimony did not constitute competent substantial evidence and must be disregarded unless Bannister could show to an absolute certainty exactly how unintentional ingestion of cocaine occurred. This was error, for the testimony of Bannister and her witnesses constitute competent substantial evidence which the hearing examiner was entitled to believe. Simply put, the hearing examiner found Bannister to be credible and concluded she was telling the truth.
The evidence before the hearing examiner also included Bannister's medical condition, which would make the ingestion of cocaine very hazardous; the testimony of her supervisors about her consistently outstanding performance, and the lack of any observation at any time that would suggest any drug use; the fact that cocaine is smuggled into the jail *138 and had, in fact, been discovered in the unit in which Bannister worked approximately two weeks before the drug test; the fact that cocaine can be absorbed through touch or ingestion; and the fact that Bannister engaged in the (as the hearing examiner found, unwise) practice of accepting food from inmates. The evidence likewise included the fact that Bannister knew about the test in advance, and had asked to take the test early because of a scheduled vacation. Plainly someone engaged in illegal drug use would wish to postpone, not advance, their test date. The evidence also included the fact that Bannister was a six-year employee who had passed all prior drug screening.
As explained in De Groot v. Sheffield, 95 So.2d 912 (Fla.1957):
Substantial evidence has been described as such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred. We have stated it to be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. In employing the adjective "competent" to modify the word "substantial," we are aware of the familiar rule that in administrative proceedings the formalities in the introduction of testimony common to the courts of justice are not strictly employed. We are of the view, however, that the evidence relied upon to sustain the ultimate finding should be sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached. To this extent the "substantial" evidence should also be "competent."
Id. at 916 (citations omitted).
In the present case the hearing examiner was the trier of fact who was entitled to determine that he believed Bannister and the evidence favorable to her case. The findings of fact entered by the hearing examiner are supported by competent substantial evidence.[5] The Manager erred by overturning the findings of fact.

V.
An alternative reading of McKim v. McNayr is that it set "in cement" the County Manager's standard of review, notwithstanding later developments in the law governing masters. The McKim decision states, in part:
In other words, if the record as made before the Personnel Advisory Board [notwithstanding its findings and recommendations] will support the actions of the County Manager in discharging the employee and disregarding the findings and recommendations, his decision should be affirmed. However, if there is absolutely no evidence adduced before the Personnel Advisory Board to support the action of the County Manager in disregarding its findings and recommendations, then he would not be at liberty to disregard the report.

168 So.2d at 80.
This language must be read very carefully. Once the hearing examiner has filed his report, his findingsincluding his findings on credibilitybecome part of the record and must be considered by the Manager. McKim does not say that the Manager can ignore the findings made by the hearing examiner. McKim does not allow the Manager to pick out isolated facts which support the Manager's view of the case, and ignore all contrary evidence.
McKim says that the Manager can take action contrary to the Board's (now hearing examiner's) findings ifand only ifthere is a record basis which justifies the Manager's decision to ignore or overturn the findings. *139 In McKim itself, the Personnel Advisory Board found the employee not guilty of the charges contained in the letter of dismissal. 168 So.2d at 80. The Manager declined to follow the Board's report and instead discharged the employee. On review, this court stated that there was "ample, indisputable evidence adduced before the Personnel Advisory Board that the appellant ... had engaged in activities which would warrant his dismissal...." 168 So.2d at 80 (emphasis added). Obviously if there was uncontroverted evidence before the Board which showed that there were grounds to fire appellant, the Board misapprehended the legal effect of the evidence by ruling otherwise. The existence of such uncontroverted evidence provided the record justification for the Manager to set aside the findings of the Board.[6]
The United States Supreme Court has considered this issue in the context of the federal Administrative Procedure Act ("federal APA"). The federal APA provides that "[o]n appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule." 5 U.S.C. § 557(b). Because of this statutory language, the federal agency is deemed to be the fact finder and is not bound by the findings of fact entered by an administrative law judge. See 2 Kenneth C. Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 11.2 at 178-79 (3d ed. 1994). This places the federal agency in a position analogous to that advocated by the County Manager and the majority here.
The federal case law holds that a federal agency may not simply ignore the findings of the administrative law judge. The factual findings become a part of the administrative record "to be considered by a reviewing court in determining whether the agency's finding is supported by substantial evidence in the record as a whole." Id. at 178. "A finding by an [administrative law judge] is particularly influential with a reviewing court... when the finding is a primary or testimonial inference that is based largely on demeanor of witnesses, since the [administrative law judge] was actually present at the time the testimony was given." Id.
Instructive is the decision of the United States Supreme Court in Universal Camera Corporation v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). There the court specifically disavowed the idea that in reviewing agency action, it is enough for the reviewing court to locate "in the record evidence which when viewed in isolation, substantiated the [agency's] findings." 340 U.S. at 478, 71 S.Ct. at 459 (citations omitted). Instead, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Id. at 488, 71 S.Ct. at 464. "The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case." Id. at 496, 71 S.Ct. at 469. Applying the Universal Camera standard, the federal Eleventh Circuit has said:
"... [W]hen the administrative law judge has concluded that a witness's testimony is credible, that is an important factor to consider. The notion that special deference is owed to a credibility finding by a trier of fact is deeply imbedded in our law. The opportunity to observe the demeanor of a witness, evaluating *140 what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly...."
. . . .
... We therefore hold that the Appeals Council has the power to reject an ALJ's [administrative law judge's] credibility findings, but in determining whether there is substantial evidence to support the decision of the Appeals Council, a federal court will consider the record as a whole, including, inter alia, the ALJ's credibility findings and the reasons those findings were rejected by the Appeals Council. In order to permit meaningful review, we also hold that the Appeals Council should ordinarily reject the ALJ's credibility findings expressly and state the reasons for its conclusion. The Appeals Council's rejection of the credibility findings in light of the stated reasons must, of course, be supported by substantial evidence on the record as a whole.
Parker v. Bowen, 788 F.2d 1512, 1521-22 (11th Cir.1986) (en banc) (emphasis added; citation omitted);[7]See also NLRB v. J.M. Machinery Corp., 410 F.2d 587, 590 (5th Cir.1969).
Those principles are directly applicable here. This is a case in which the assessment of the credibility of witnesses is crucial, particularly the credibility of Bannister. The hearing examiner had the opportunity to observe Bannister and the other witnesses; the County Manager did not. The hearing examiner made specific credibility determinations in favor of Bannister and her witnesses. Those credibility determinations have now become part of the administrative record, and cannot be ignored by the County Manager.
Under the principles outlined above, the County Manager cannot pick out isolated facts and use them as a basis for his ruling. Instead, if the Manager wants to base a ruling on a particular fact, the Manager must not only consider the evidence which supports that fact, but must also "take into account whatever in the record fairly detracts from its weight." Universal Camera Corporation v. NLRB, 340 U.S. at 488, 71 S.Ct. at 464. Here, the Manager wishes to rely on the fact that Bannister failed the drug test. However, Bannister has offered competent substantial evidence denying illegal drug use and supporting a defense of unintentional ingestion of cocaine. The Manager is not allowed to view the drug test failure in isolation.
Under the authorities outlined above, if the reviewing agency wishes to overturn a hearing examiner's credibility findings, the reviewing agency must give an explanation of why the agency is doing so. Parker v. Bowen, 788 F.2d at 1521. In this case, the County Manager gave such an explanation. The Manager explained that in his view, the hearing examiner's determination of unintentional ingestion of cocaine was not supported by the evidence.
In doing so, however, the County Manager misapprehended the law regarding competent substantial evidence. The Manager made the incorrect assumption that Bannister's testimony and the testimony of her witnesses was not "evidence" unless the witnesses *141 could establish to a certainty how the inadvertent exposure occurred. That was an erroneous view of the law. Under De Groot v. Sheffield, 95 So.2d at 916, the hearing examiner's findings in this case were supported by competent substantial evidence. Since that is the only reason given by the County Manager for overturning the hearing examiner's factual findings, it follows that the ruling of the Manager cannot stand and Bannister must be reinstated.

VI.
The majority opinion allows the positive test for cocaine to serve as competent, substantial evidence sufficient to sustain the county manager's decision to discharge Bannister. Respectfully, the majority opinion misses the point. That Bannister failed the drug test is a given. The purpose of the drug test, however, is to detect illegal drug use. The issue presented in this case is whether there is an innocent explanation for failing the drug test. The hearing examiner found that there was, namely, inadvertent consumption of cocaine.
Under the majority's approach, the drug test results are conclusive, and Bannister wasted her time by requesting a hearing at all. For example, under the approach taken by the majority, an employee could conclusively demonstrate that his or her sample had been tampered with and the Manager could simply ignore the evidence of tampering.
Both parties presented expert witnesses before the hearing examiner in this case. The experts agreed that there are instances where inadvertent exposure to cocaine have produced positive test results. The experts also agree that human beings are fallible and that laboratory error can occur.
By saying that a positive test result is conclusive proof of guilt, the majority elevates the positive test result to the status of a conclusive presumption. That approach is contrary to law. In order for a presumption to be constitutional, "there must be a right to rebut in a fair manner." Straughn v. K & K Land Management, Inc., 326 So.2d 421, 424 (Fla.1976). It is a due process violation to create a presumption without providing the adverse party any opportunity to rebut it. Public Health Trust of Dade County v. Valcin, 507 So.2d 596, 599 (Fla.1987); accord Chandler v. Department of Health and Rehabilitative Services, 593 So.2d 1183, 1184 (Fla. 1st DCA 1992).

VII.
At an early date the Florida Supreme Court adopted the rule that if a board or officer was empowered to enter findings of fact, those findings of fact should not be overturned by the reviewing administrative agency so long as the findings were supported by competent substantial evidence. City of Miami v. Huttoe, 38 So.2d 819, 820 (Fla.1949). This rule was adopted in recognition of the fact that the person conducting the hearing is in a better position to observe the demeanor of the witnesses and make credibility determinations. Id. Thus in Huttoe, in a disciplinary proceeding very similar to the one now before us, the City Manager was not allowed to overturn the factual findings of the Personnel Advisory Board.
In the 1960's, this court held that Huttoe did not apply to hearings under section 2-47 of the Dade County Code because section 2-47 was worded differently than the City of Miami provision construed in Huttoe. Metropolitan Dade County v. Corozzo, 212 So.2d at 892-93. In the 1960's, section 2-47 granted authority to Dade County's Personnel Advisory Board solely to enter "advisory findings." Id.; see McKim v. McNayr, 168 So.2d at 79 n. 3.
By 1974 the Dade County Code had been amended to delete the term "advisory findings." Metropolitan Dade County v. Marusa, 295 So.2d at 705 n. 1. Under the revised ordinance:
The hearing examiner shall conduct a hearing after notice upon the charges and shall transmit his findings-of-facts, conclusions, and any recommendations together with a transcript of all evidence taken before him and all exhibits received by him, to the manager who may sustain, *142 reverse or modify the suspension, reduction in grade, or the dismissal.
Id. (emphasis added).[8]
By virtue of this amendment to the Dade County Code, the Dade County provision became indistinguishable from the Miami City Code provision construed in City of Miami v. Huttoe. Nonetheless, this court adhered to the view that "the county manager is not bound by the findings of fact, conclusions and recommendations of the hearing examiner." Metropolitan Dade County v. Marusa, 295 So.2d at 706 (emphasis added). In subsequent decisions, this court has continued to take the position that the County Manager is not bound by the hearing examiner's findings of fact, even though the word "advisory"which was the underpinning of McKim and Corozzohas long since disappeared from the ordinance.[9]
Given the amendment of the Dade County Code to make the hearing examiner the fact finder, there is no longer a viable basis on which to distinguish the Dade County Code from the City of Miami provision construed in City of Miami v. Huttoe. That being so, it appears to me that we are obliged to recede from the McKim line of cases, and apply Huttoe. Under Huttoe, the factual findings must be sustained so long as there is competent substantial evidence to support them.

VIII.
The majority's main position is that the County Manager is entitled to reweigh the evidence, even though the Manager did not hear any of the evidence. The majority says alternatively, even if the Manager is not allowed to reweigh the evidence, the Manager's decision in this case must be upheld because the hearing examiner found Bannister guilty of misconduct, and the Manager is allowed the discretion to set the penalty. With this alternative argument I must also disagree.
The Manager's ruling in this is very clear: he decided that there was no evidence to support unintentional ingestion of cocaine. He thus upheld the decision of the Department of Corrections to fire Bannister for intentional use of controlled substances.[10]
In deciding to discharge Bannister, both the Department and the Manager proceeded on the assumption that Bannister had intentionally used cocaine. Consequently, in deciding what discipline was appropriate in Bannister's case, both the Department and the Manager were proceeding on the premise that Bannister was an illegal drug user and that the penalty should be set accordingly.
The majority's alternative argument for upholding the Manager's action is that Bannister was found guilty of misconduct in accepting food from inmates. The majority reasons that the Manager is allowed to select the exact level of discipline for any particular offense, and the Manager is therefore allowed to impose a penalty of discharge for accepting food from inmates.
The problem is that when the Manager took his action, he was not establishing discipline for the offense (if it is an offense) of accepting food from inmates. The Manager was reviewing the Corrections Department's decision to discharge Bannister for intentional illegal drug use.
Basic fairness requires that if the only "offense" supported by this record is the *143 acceptance of food from inmates, this case must be returned to the Manager to decide the correct penalty level for the "offense" of accepting food from inmates.[11]See Boulton v. Morgan, 643 So.2d 1103, 1105 (Fla. 4th DCA 1994); Maddox v. Department of Professional Regulation, 592 So.2d 717, 720 (Fla. 1st DCA 1991), review denied, 601 So.2d 552 (Fla.1992).

IX.
The majority says that the County Manager has the authority to reweigh the evidence which was taken by a hearing examiner, even though the Manager never saw the witnesses or heard the testimony. I do not think that our precedents support that position. If that is a fair reading of this court's cases, then we should recede therefrom. It is fundamentally unfair to allow the Manager to rule that Bannister and her witnesses were not credible, when the Manager never saw those witnesses and is in no position to make such a judgment. Whether this case is analyzed under the Florida law governing masters or under analogous cases construing the federal APA, the County Manager did not have the authority to arbitrarily disregard the factual findings of the hearing examiner.
Due process requires that an employee have a right to a fair hearing in a fair manner. If the majority is correct in its reading of our precedents, then the time has come for us to revisit them. The process which has been followed here is not fair.[12]
The circuit court was entirely correct in overturning the action of the County Manager. Certiorari should be denied.

ON MOTION FOR REHEARING
PER CURIAM.
Motion for rehearing denied.
BARKDULL and GODERICH, JJ., concur.
COPE, J., dissents.

*144 ON REHEARING EN BANC

Before SCHWARTZ, C.J., and BARKDULL, NESBITT, JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER and SHEVIN, JJ.
PER CURIAM.
After oral argument, the motion for rehearing en banc is denied.
BARKDULL, NESBITT, LEVY, GERSTEN and GODERICH, JJ., concur.
SCHWARTZ, Chief Judge (specially concurring).
I have grave doubts about both the wisdom and the continued viability of McKim v. McNayr, 168 So.2d 78 (Fla. 3d DCA 1964), cert. denied, 173 So.2d 148 (Fla.1965), and would seriously consider departing from or overruling it in an appropriate case. Because, however, precisely what the hearing examiner found as fact and therefore whether the county manager actually overruled his finding are highly uncertain, I do not believe that this is such a case.
JORGENSON, COPE, GREEN, FLETCHER and SHEVIN, JJ., dissent.
NOTES
[1] In Eldredge, the Civil Service Board was the functional equivalent of the Personnel Advisory Board or the hearing examiner.
[2] Under the Florida APA, the factual findings of a hearing officer cannot be overturned by the reviewing administrative agency so long as the factual findings are supported by competent substantial evidence. See §§ 120.57(1)(b)10, 120.68(10), Fla.Stat. (1993). The circuit court concluded that in this case the hearing examiner's findings were supported by competent substantial evidence, and that the Manager had erred in ruling to the contrary.
[3] Current section 2-47 provides in part:

The hearing examiner shall conduct a hearing after notice upon the charges and shall transmit his findings of facts, conclusions, and any recommendations together with a transcript of all evidence taken before him and all exhibits received by him, to the Manager who may sustain, reverse or modify the suspension, reduction in grade, or the dismissal.
(Emphasis added.)
[4] Of course, if the facts are uncontroverted, or if the master makes factual determinations purely on the basis of a written record, without live testimony, no particular deference is owed to the master by the trial court, because the trial court is in as good a position as the master to evaluate the evidence. See 45 Fla.Jur.2d References § 33, at 34 (1984), and cases cited therein.
[5] Somewhat useful by way of comparison is Blappert v. Dept. of Police, 647 So.2d 1339 (La. Ct.App.1994). There a ten-year police officer tested positive for a marijuana metabolite. The question was whether the sample had been contaminated or there had been a break in the chain of custody. Among other things, factors weighing in Blappert's favor were that the hearing examiner found Blappert to be a very credible witness; that he had a ten-year record of exemplary service; that he had been advised in advance of the time period for the test; that he had passed a drug test six months earlier; and that his supervisor of seven years had never observed any sign of substance use or abuse, despite the officer's being called in to work at all hours of the night. When combined with a gap in the proof of chain of custody, these factors were found sufficient to set aside as unreliable the results of the drug test.
[6] This court's post-McKim decisions shed little light on the application of the McKim standard. In Metropolitan Dade County v. Corozzo, 212 So.2d at 893, the Personnel Advisory Board had found Corozzo not guilty of any misconduct but the County Manager dismissed her. This court's opinion cited testimony of a county investigator that Corozzo rang up a lower-than-posted price for food she had sold, and pocketed the difference between the posted price and the price she had charged the investigator. This court's opinion gives no indication whether Corozzo testified and whether the testimony of the county investigator was controverted. If the testimony was uncontroverted, then the action of the County Manager was entirely proper.

In Metropolitan Dade County v. Marusa, 295 So.2d at 704, and Metropolitan Dade County v. Mingo, 339 So.2d 302 (Fla. 3d DCA 1976), the County Manager simply followed the recommendation of the hearing examiner. In Victor v. Stierheim, 380 So.2d at 1321, the County Manager terminated an employee and this court reversed because there was no evidence of misconduct.
[7] The court noted that there may be exceptions to this general rule:

11. There may well be contexts in which it would be unnecessary for the Appeals Council to expressly reject the ALJ's credibility findings and explain its conclusion. For example, the Appeals Council may reject a credibility finding of an ALJ in a case where the credibility of the particular witness was unimportant to the decision. In such a case, the substantiality of the evidence to support the Appeals Council's decision would be little affected by whether or not the witness was credible....
Similarly, while it would be the better practice for the Appeals Council to expressly reject the ALJ's credibility findings and articulate its reasons, the reviewing court's function would not be frustrated if the Appeals Council's implicit rejection and explanation were sufficiently clear to permit review. Cf., e.g., Tieniber v. Heckler, 720 F.2d 1251, 1254-55 (11th Cir. 1983) (ALJ need not make express credibility finding, but "the implication must be so clear as to amount to a specific credibility finding"); Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. Unit B, April 15, 1981) (ALJ need not make explicit credibility finding if implication is "clear").
788 F.2d at 1521-22 n. 11.
[8] Present-day section 2-47 is identical on this point.
[9] Dade County's "Personnel Rules for the Classified Service" continues to use the language of the old ordinance. Id. ch. VIII, § 5. The rule states, "The Examiner shall act as a fact finding official, considering all available information related to the action, and transmit these facts and any advisory findings to the manager who may sustain, reverse or modify the suspension, reduction in grade, or the dismissal." Id. (emphasis added). The fact that the former ordinance provision continues to be embodied in Dade County's Personnel Rules is of no consequence. Section 2-42 of the Dade County Code authorizes the county commission to adopt personnel rules. The Code explicitly limits the rulemaking authority as follows: "When disciplinary action is taken, the procedures provided for in Section 2-47 shall prevail." Dade County Code § 2-42. Consequently, the text of section 2-47 is controlling. Section 2-47 now authorizes the hearing examiner to make findings of fact, not advisory findings.
[10] The August 29, 1991 letter of discharge stated, in part, "Results of that test showed positive for cocaine metabolytes. The use of controlled substances is illegal and constitutes conduct unbecoming an employee."
[11] The proceedings in this case were conducted under a notice which stated:

You are hereby terminated from employment with the Metro Dade Corrections and Rehabilitation Department. This termination is based on violations of the following sections of the Dade County Personnel Rules and the Dade County Corrections and Rehabilitation Department Manual:
1. Dade County Personnel Rules, Chapter VIII, Section 7, Paragraph (I), Cause for Dismissal, Demotion, or Suspension: That the employee has been guilty of conduct unbecoming an employee of the County whether on or off duty provided allegations shall be specific and shall describe the conduct which is the basis of the charge.
On Tuesday, August 14, 1991, you submitted to a toxicology test as part of your bi-annual physical examination. Results of that test showed positive for cocaine metabolytes.
The use of controlled substances is illegal and constitutes conduct unbecoming an employee. This Department does not condone and will not tolerated [sic] the use of controlled substances by any of its employees. Thus, your employment has been terminated.
There is no notification that the acceptance of food from inmates was to be an issue in the case. See West v. Board of County Commissioners, 373 So.2d 83, 85 (Fla. 3d DCA 1979). By the time the hearing of Bannister's appeal had been conducted, more than six months had passed so that, as a practical matter, she had already served the period of suspension recommended by the hearing examiner.
[12] Although the County has not made an alternative argument for a remand for a new hearing before the hearing examiner, grounds for a new hearing exist. The hearing examiner admitted into evidence the results of a polygraph examination which Bannister passed. Under present Florida law, the County's objection was well taken and the polygraph results should have been excluded. See Carter v. State, 474 So.2d 397, 398 (Fla. 3d DCA 1985), review denied, 488 So.2d 69 (Fla.1986).

Although the parties have treated the hearing examiner's finding as being a finding of unintentional ingestion of cocaine, the hearing examiner used somewhat equivocal phraseology, stating that the "drug may have been ingested without the Appellant's knowledge." Although not addressed by the parties, it would seem to me that the hearing examiner would need to make a determination that it was more probable than not that the ingestion was inadvertent.
Likewise, Bannister has not disputed in these proceedings the hearing examiner's finding of reliability of the testing method. The evidence before the hearing examiner suggested, however, that the County's private testing laboratory had not retained a large enough untested "split" sample to allow Bannister to have her own confirmation test done. If, in fact, the County's lab did not retain a large enough untested sample to allow Bannister to obtain an independent confirmation test, the integrity of the testing process has been undercut. However, Bannister has raised no such issue in the proceedings before us.