733 So.2d 1040 (1999)
TOWN OF SURFSIDE, Florida, Petitioner,
v.
Scott HIGGENBOTHAM, Mitchell Glansberg, James McHugh, Rodney Forrest and The Dade County Police Benevolent Association, Respondents.
No. 97-3275.
District Court of Appeal of Florida, Third District.
February 24, 1999.
Rehearing Denied April 30, 1999.
*1041 Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick and James Crosland and Craig R. Annunziata, Miami, for petitioner.
Slesnick & Casey and Donald D. Slesnick and James C. Casey, Miami, for respondents.
Before SCHWARTZ, C.J. and NESBITT, JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN and SORONDO, JJ.
SORONDO, J.
This case arises as a petition for writ of certiorari by the Town of Surfside ("Surfside"), seeking review of an opinion of the circuit court's appellate division. For the reasons which follow, we deny certiorari.
The respondents were two police officers and two police sergeants employed by Surfside. Surfside alleged that on June 3, 1993, the following events took place: Officers Mitchell Glansberg, Scott Higgenbotham, and John Madden became involved in an automobile chase of three fleeing suspects in a purse snatching. When the suspects stopped their vehicle, they were arrested. During the course of this arrest, Officer Higgenbotham's firearm discharged accidentally while he was attempting to handcuff one of the suspects. Failing to holster a firearm while handcuffing a suspect is a violation of the departmental rules, as is failing to report the discharge of a firearm, which Surfside claims Officer Higgenbotham did as well. Officer Madden observed Sergeant Rodney Forrest, the shift supervisor, approaching the scene as Officer Madden drove away. While filling out his activity sheet near the squad room, Officer Glansberg asked Officer Madden to follow him into the dressing room. Officer Madden observed Sergeant James McHugh, Officer Higgenbotham and Officer Henry Casebo, heard Officer Higgenbotham tell Sergeant McHugh that he accidentally discharged his weapon, and heard Sergeant McHugh say either not to *1042 worry about it, or not to say anything about it.
Based on these allegations, the Police Chief charged Officer Higgenbotham with the following offenses: 1) discharging his weapon while handcuffing a suspect, and failing to notify his immediate supervisor (Sergeant Forrest) of the discharge; 2) failing to maintain the scene of the incident, after discharging his weapon, to permit an on-scene investigation by his supervisor and the internal affairs investigator; 3) failing to submit a "Control of Persons" report regarding the discharge of the weapon; 4) failing to submit a verbal or written report to his supervisor regarding the discharge of the weapon; 5) failing to enforce department regulations and orders; 6) conduct unbecoming an officer by conspiring with Sergeant McHugh and Officer Glansberg to fail to report the discharge of his weapon; and 7) failing to be truthful by conspiring with Officer Glansberg and Sergeant McHugh to fail to report the discharge of his weapon.
Sergeant McHugh and Officer Glansberg were charged with the following: 1) failing to enforce regulations when learning of the discharge of Officer Higgenbotham's weapon; 2) conduct unbecoming an officer by conspiring to fail to report the discharge of the weapon; and 3) failing to be truthful by failing to report the discharge of a weapon.
Sergeant Forrest was charged with neglect of duty by failing to: a) assure that subordinates filed Control of Persons reports, b) provide three separate narratives in the Control of Persons reports; c) assure that Control of Persons reports were prepared in a timely fashion; and d) assure that Officer Higgenbotham and Sergeant McHugh properly completed the complaint affidavit forms for each of the suspects involved in the June 3 incident. Officer Higgenbotham, Officer Glansberg and Sergeant McHugh were discharged, and Sergeant Forrest was demoted to the rank of police officer.
Pursuant to the rights granted to them under the collective bargaining agreement between Surfside and the Dade County Police Benevolent Association, the officers appealed the Chief's decision to a Hearing Examiner.[1] The officers asserted that Officer Higgenbotham never discharged his weapon, and that there was no ensuing coverup. The Hearing Examiner heard testimony from Officer Madden, called as a witness by Surfside, who testified as described above. The Hearing Examiner noted that Officer Madden was unclear as to several details of the event, and that there was some inconsistency between his testimony and a memo that he had previously filed. Evidence presented by Surfside also included testimony of two of the suspects in the incident and testimony by the internal affairs investigator.
The officers presented testimony of Officer Patricia Merideth, who was on the scene the night of the incident and testified that she did not hear a gunshot. Officer Casebo testified that he was not in the dressing room at the time Officer Madden said he was there. The charged officers also testified on their own behalf. They testified that Officer Higgenbotham's firearm did not discharge, and that there was no conspiracy to coverup a firearm discharge.
The Hearing Examiner concluded that Officer Higgenbotham accidentally discharged his weapon and failed to notify his supervisor of the discharge. He also concluded, *1043 however, that there was no conspiracy to conceal the discharge of the weapon. This resulted in a conclusion that Surfside proved six of the seven allegations against Officer Higgenbotham, none of the allegations against Officer Glansberg and Sergeant McHugh, and proved violations of two of the three departmental rules Sergeant Forrest was accused of violating.
In weighing the completely conflicting version of the events that did or did not take place, the Hearing Examiner found Officer Madden's testimony to be less credible than that of the other officers who testified. Specifically, he stated that "Officer Madden's recollections ... do not rise to a level of reliability so that I would credit his testimony above the absolute denials of Officer Glansberg, Officer Higgenbotham, Officer Casebo and Sergeant McHugh."
The Hearing Officer thus recommended that Sergeant McHugh be reinstated to the position of sergeant and given back pay and benefits, that Officer Glansberg be offered reinstatement and given back pay and benefits, that Sergeant Forrest be restored to the position of sergeant and retroactively demoted to the position of police officer for a period of forty-five days, and given back pay and benefits, and that Officer Higgenbotham be reinstated to the position of police officer but not be given back pay and benefits.
The Surfside Town Manager reviewed the report of the Hearing Examiner. He agreed with the findings of the Hearing Examiner to the extent that he found violations by Officer Higgenbotham and Sergeant Forrest. He disagreed, however, with the Hearing Examiner's finding that there was no conspiracy to conceal the discharge of the firearm. He found that "the Examiner's basis for discrediting Madden's testimony is unpersuasive and inadequate." He found that Officers Higgenbotham and Glansberg and Sergeant McHugh were properly discharged, and that Sergeant Forrest was properly demoted. He thus determined that the decisions of the Police Chief were supported by substantial and competent evidence and reaffirmed the original disciplinary actions.
The officers appealed to the circuit court's appellate division. The circuit court found that the Town Manager did not have the authority to overturn the factual findings of the Hearing Examiner unless the decision of the Hearing Examiner was not supported by competent substantial evidence, because the Hearing Examiner was in a better position to make credibility assessments than was the Town Manager. It thus remanded the case to the Town Manager to reconsider the discipline to be imposed in light of the factual findings of the Hearing Examiner. This petition for writ of certiorari follows.
We deny the petition and approve the ruling of the circuit court in this case. In doing so, we recede from this court's decisions in Metropolitan Dade County v. Bannister, 683 So.2d 130 (Fla. 3d DCA 1996), review denied, 695 So.2d 698 (Fla. 1997), McKim v. McNayr, 168 So.2d 78 (Fla. 3d DCA 1964), and Metropolitan Dade County v. Corozzo, 212 So.2d 891 (Fla. 3d DCA 1968). We further recede from our decisions in Metropolitan Dade County v. Marusa, 295 So.2d 704 (Fla. 3d DCA 1974), and Victor v. Stierheim, 380 So.2d 1319 (Fla. 3d DCA 1980), to the extent that they may conflict with our holding in the present case.
In Bannister, a Dade County Corrections Officer was discharged for testing positive for cocaine metabolite in a drug screening. 683 So.2d at 131. She brought the case before a Hearing Officer, who found that the cocaine may have been ingested without Bannister's knowledge, through accepting food from inmates. The Hearing Officer decided that she should not be terminated, but that she should be suspended, because she should have known what might happen if she took food from inmates. The County Manager in that case reviewed the decision and concluded *1044 that the determination that the ingestion of cocaine was unintentional was not supported by any evidence. Accordingly, the County Manager sustained Bannister's dismissal. Bannister appealed to the circuit court, which found that the County Manager erred in reversing the Hearing Officer and reinstated Bannister. Dade County then filed a petition for writ of certiorari with this court. This court granted the writ and reversed the circuit court. Id. at 133.
In Bannister, this court reached two conclusions. First, based on prior case law, the County Manager could, under the Dade County Code, conduct a de novo review of the record, and the decision of the County Manager could not be disturbed unless there was no substantial competent evidence in the record to support it. Id. at 133. Second, even if the County Code were interpreted as making the Hearing Officer's findings of fact binding on the County Manager unless they were not supported by substantial competent evidence, the County Manager still would have the complete discretion to determine the appropriate penalty where the Hearing Officer decided that an offense was committed by the employee. Id. Thus, because Bannister was found by the Hearing Officer to have committed the offense of taking food from inmates, the Manager could either decide that she was not credible, and that she intentionally ingested cocaine, or he could take the offense of taking food from inmates and mete out the punishment of discharge for that offense. Id. In either event, the court found the decision of the County Manager was sustainable. Id.
The court based its first conclusion primarily on the case of McKim v. McNayr, 168 So.2d 78 (Fla. 3d DCA 1964). In McKim, this court looked at the 1964 version of the Dade County Code, which provided that an employee may have a suspension, reduction in grade, or dismissal reviewed by a Personnel Advisory Board, and that "[t]he board shall act as a fact finding body, considering all available information related to the action, and transmit these facts and its advisory findings to the manager who may sustain, reverse, or modify the suspension, reduction in grade, or the dismissal." See id. at 80; Code of Metropolitan Dade County, Florida § 2-47 (1964) (emphasis added). The court compared the report of the Personnel Advisory Board to that of a special master and held that the findings are merely recommendations which may or may not be followed by the County Manager. Id.
This court in Bannister also addressed the Florida Supreme Court case of City of Miami v. Huttoe, 38 So.2d 819 (Fla.1949). In Huttoe, the City of Miami suspended an employee without pay, and the charges were brought before the Civil Service Board. The Board found the employee not guilty of all the charges and recommended that he be reinstated. Id. at 820. The City Manager disregarded the recommendation and ordered the employee discharged. The court held that the City Manager should have followed the findings unless they were "manifestly against the clear preponderance of the evidence." It stated that
[T]hose parties, or that person, who have, or has, before them, or him, the witnesses whose demeanor and conduct may be observed are, or is, in a much better position to determine the truth or falsity of the evidence than is the person, or the court, who must make such determination upon `a cold typed transcript.'
Id.
The cases which have followed McKim and Huttoe have not made much of an attempt to explain the differing standards in these two cases. In Metropolitan Dade County v. Corozzo, 212 So.2d 891 (Fla. 3d DCA 1968), however, this court seemed to distinguish Huttoe. In Corozzo, an employee was dismissed and appealed to the Personnel Advisory Board which found her not guilty of any violation. Id. at 892. The County Manager disregarded the findings *1045 and recommendations of the board and sustained her dismissal. Id. The court found that the County Manager is "clearly granted the right to act upon the evidence presented to the personnel advisory board." Id. at 893. It came to this conclusion by looking at the language of both the Dade County Code (quoted supra), and the language of the City of Miami Code, which was under scrutiny in Huttoe. Id. at 892-93. The City Code provides:
After hearing and considering the evidence for and against the employee, the board shall report in writing to the city manager its findings and recommendations. The city manager shall then sustain, reverse, or modify the action of the department director.
City of Miami Code § 40-122(a) (1997).[2]
Subsequent to McKim and Corozzo, section 2-47 has been amended so that a Hearing Examiner conducts the hearings, not a Personnel Advisory Board. The term "advisory findings" was also deleted, leaving the section to now read:
The hearing examiner shall conduct a hearing after notice upon the charges and shall transmit his findings of facts, conclusions, and any recommendations together with a transcript of all evidence taken before him and all exhibits received by him, to the Manager who may sustain, reverse or modify the suspension, reduction in grade or the dismissal.
Code of Metropolitan Dade County § 2-47 (1992).
In spite of this change, however, this court has continued to follow McKim. See Victor v. Stierheim, 380 So.2d 1319, 1321 (Fla. 3d DCA 1980); Metropolitan Dade County v. Marusa, 295 So.2d 704, 706 (Fla. 3d DCA 1974).
Thus, in Bannister, this court upheld McKim's continued applicability. 683 So.2d at 132. It did this while simultaneously continuing to endorse Huttoe and interpreting it to mean that the facts as determined by the Hearing Officer cannot be disregarded if he or she determines that the employee has been guilty of no offense. Id. at 133. Therein lies the inconsistency with Bannister, and the reason why it must be overruled.
There is now virtually no difference between Dade County Code section 2-47, and the Miami code provision interpreted in Huttoe. See Metropolitan Dade County v. Corozzo, 212 So.2d 891, 892 (Fla. 3d DCA 1968). While section 2-47 at the time of McKim provided for "advisory findings," it no longer provides as such and there is thus no material distinction between that provision and the one in Huttoe, which was found to make the fact finder's conclusions binding unless there is no substantial competent evidence to support it. Likewise, there is no material distinction between the Miami code provision and the Surfside provision. There is nothing in any of these provisions to suggest that the conclusions of the hearing examiner or hearing officer should be merely "advisory," and there is thus no explanation as to why the rule in Huttoe should not be applicable.
Certainly, in the collective bargaining agreement, Surfside and the Dade County Police Benevolent Association could have negotiated to the contrary. The fact remains that they did not, and by the clear language of the agreement, the Town Manager's authority is limited to: (a) a review of whether the findings of the Hearing Examiner are supported by competent substantial evidence, and (b) a review of the recommended discipline of the officers which he may "sustain, reverse or modify." To hold otherwise is to make the appearance before the Hearing Examiner meaningless, and a violation of due process.
*1046 Surfside argues that the circuit court's opinion ignores the fact that the collective bargaining agreement at issue provides that the "Town Manager's decision shall be based on substantial competent evidence." It suggests that this sentence means that the Town Manager has the authority to review the factual findings of the Hearing Examiner. In fact, the Manager does have the authority to review the factual findings of the Hearing Examiner but only to determine whether such findings are supported by competent substantial evidence.
In this case, the Hearing Examiner did not merely apply a different penalty than did the Police Chief, he exonerated two of the officers completely. By the Town Manager's own unambiguous language, he completely disregarded the Hearing Examiner's determinations of credibility of the witnesses. Specifically, the Town Manager stated:
I disagree with the Examiner's finding that Higgenbotham, McHugh and Glansberg did not conspire to conceal the discharge of the firearm. My review of the evidence reveals that Officer Madden testified that, in the police station following the arrests, a conversation took place between Higgenbotham, McHugh and Glansberg wherein McHugh directed the others not to say anything about the firearm discharge. The Examiner discredited Madden's testimony largely because Madden failed to recollect the exact words used by McHugh in the conversationwhich had occurred over two and one-half years earlier.
However, in finding that Higgenbotham had discharged the firearmand thereby crediting Madden's testimony the Examiner himself recognized that it was not unusual "for there to be discrepancies in eye-witness testimony as to various details." Moreover, the Examiner had credited Madden's testimony in all other material respects. In any event, my review of the evidence reveals that Madden described McHugh's comment with only minor variations (i.e. "not to say anything", or "don't worry about it"). I find that these variations, whichever said, are inconsequential because the underlying tenet is indistinguishable. That is, McHugh (the shift supervisor) directed the other officers to conceal the fact that Higgenbotham had discharged the firearm.
In sum, I find that the Examiner's basis for discrediting Madden's testimony is unpersuasive and inadequate. In so doing, I find that Madden's testimony was completely consistent and established that Higgenbotham, Glansberg and Madden were present when McHugh directed Higgenbotham and Glansberg not to say anything about the firearm discharge.
He chose to believe the testimony of one officer (Officer Madden) over that of several other officers, even though he was not present to observe their demeanor. We note that the Hearing Examiner was very specific in explaining why he believed the testimony of Officer Madden as concerned the discharge of the firearm and not as to the alleged conspiracy:
With regard to [the charge of conspiracy], the City relies exclusively on the testimony of Officer John Madden who testified that Officer Glansberg advised him to respond to the lockeroom [sic], which he did. He stated he was in the area near the entrance door to the squadroom when he was approached by Officer Glansberg. He stated [sic] Officer Glansberg and he entered the lockeroom [sic] and that the persons there, in addition to himself, were Sergeant McHugh, Officer Higgenbotham, Officer Glansberg and Officer Casebo. He could not recall the exact words of the entire conversation but stated that Sergeant McHugh was advised of the discharge of the weapon by Officer Higgenbotham or Officer Glansberg and that Officer Higgenbotham stated it was accidental. He estimated the conversation *1047 to be of a minute and a half duration and that Sergeant McHugh advised all those present not to say anything or not to worry about it or something along those lines. Officer Madden stated that he then exited the room and went home and did not participate in the conversation.
As previously noted, Officer Higgenbotham, Officer Glansberg, Sergeant McHugh and Officer Casebo all deny that this conversation occurred. Further, although Officer Madden shows on City Exhibit 3 that Officer Casebo participated in this conversation, Officer Casebo, who was on the 11:00 p.m. to 7:00 a.m. shift, absolutely denied participating in the conversation and had a reasonable explanation for his whereabouts during this time.... Further, although Officer Madden's sketch (City Exhibit 3) places Officer Casebo in the lockeroom [sic], his memo of October 5, 1993 (City Exhibit 4) says nothing whatsoever about the presence of Officer Casebo during the alleged discussion. I would also note that Officer Madden was less than clear as to what he stated in the lockeroom [sic]. For example, on cross-examination he stated that he heard conversations transpire and that the "impression he got" was that Sergeant McHugh said, "don't worry about it" or "don't say anything that will hurt you." He further stated that he was told by Sergeant McHugh not to discuss anything but later stated that from the "gist" of what he got talking to the group, the understanding he got was to not say anything and not to worry about it. No reasonable explanation appears for Sergeant McHugh's creation and participation in such a cover-up. I find that Officer Madden's recollections, when he uses terms such as "impression" and "gist," do not rise to a level of reliability so that I would credit his testimony above the absolute denials of Officer Glansberg, Officer Higgenbotham, Officer Casebo and Sergeant McHugh. Accordingly, I find and conclude that the City has not met its burden of proof that Officer Higgenbotham, Officer Glansberg, and Sergeant McHugh conspired to conceal the discharge of Officer Higgenbotham's weapon and/or failed to properly report the incident, and I recommend the Town Manager so find and conclude as well.
The Town Manager may not disregard the findings of fact made by the Hearing Examiner unless there is no competent substantial evidence to support them. Not only is there abundant evidence to support the Hearing Examiner's findings in this case, his findings are accompanied by clear and persuasive reasoning as to why he found as he did. Specifically, that Madden was definitive on the issue of the discharge of the firearm, but equivocal as to the facts which are the gravamen of the conspiracy. We therefore deny the petition for certiorari and approve the circuit court's opinion remanding the case for the Town Manager to reconsider the discipline to be imposed in light of the factual findings of the Hearing Examiner.
NOTES
[1] The collective bargaining agreement provides:

Any employee ... may appeal a suspension, reduction in grade or termination to a hearing examiner....
. . .
The hearing examiner shall conduct a hearing after notice upon the charges and shall transmit his findings of fact, conclusions, and any recommendations together with a transcript of all evidence taken before him and all exhibits received by him, to the Town Manager who may sustain, reverse or modify the suspension, reduction in grade, or the dismissal.
(emphasis added).
[2] We do not find persuasive the argument that the court in Huttoe relied upon the fact that the City Manager testified against the employee before the Board. There is no indication in the opinion that this was the basis for the decision, and it appears to be added as an afterthought.